UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLUMBERS & STEAMFITTERS LOCAL 773 PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>ELAN CORPORATION, PLC, G. KELLY MARTIN and JAMES E. CALLAWAY<br><br>Defendants. | **Civil Action No. 08-CV-8761- AKH** |
| IRVING FEINGOLD, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>ELAN CORPORATION, PLC, G. KELLY MARTIN and JAMES E. CALLAWAY<br><br>Defendants. | **Civil Action No. 08-CV-9179-AKH** |

[*caption continued on next page*]

**MEMORANDUM IN SUPPORT OF THE MOTION OF GARY W. KLEINMAN TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

| | |
|---|---|
| AARON MAGEL, individually and on behalf of all others similarly situated,<br><br>        Plaintiff<br><br>     v.<br><br>ELAN CORPORATION, PLC, G. KELLY MARTIN and JAMES E. CALLAWAY<br><br>        Defendants. | **Civil Action No. 08-CV-9808-AKH** |
| MERV GOLDBAS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff<br><br>     v.<br><br>ELAN CORPORATION, PLC, G. KELLY MARTIN and JAMES E. CALLAWAY<br><br>       Defendants. | **Civil Action No. 08-CV-10280-AKH** |
| DIEDRA SENEGAL, individually and on behalf of all others similarly situated,<br><br>        Plaintiff<br><br>     v.<br><br>ELAN CORPORATION, PLC, G. KELLY MARTIN and JAMES E. CALLAWAY<br><br>       Defendants. | **Civil Action No. (not assigned)** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………………………………1

PROCEDURAL BACKGROUND……………………………………………………….……..2

STATEMENT OF FACTS…………………………………………………………………...3

ARGUMENT………………………………………………………………………………..5

I. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS…………………..5

II. MR. KLEINMAN SHOULD BE APPOINTED LEAD PLAINTIFF……………………7

    A. The Procedural Requirements Pursuant to the PSLRA……………………...7

    B. Mr. Kleinman Is "The Most Adequate Plaintiff"……………………………………8

        1. Mr. Kleinman Has Complied With The
PSLRA And Should Be Appointed Lead Plaintiff …………………………….8

        2. Mr. Kleinman Has The Largest Financial Interest
Under the Proper Class Period…………………………………………………9

        3. Mr. Kleinman Satisfies The Requirements Of Rule 23……………………11

            i. Mr. Kleinman's Claims Are Typical Of The Claims
Of All The Class Members……………………………………….……13

            ii. Mr. Kleinman Will Adequately Represent
The Class…………………………………………………….……15

III. THE COURT SHOULD APPROVE MR. KLEINMAN'S
CHOICE OF LEAD COUNSEL…………………………………………………………..16

CONCLUSION……..………………………………………………………………….......16

**PRELIMINARY STATEMENT**

Gary W. Kleinman ("Mr. Kleinman") submits this memorandum in support of his motion: (1) to consolidate, pursuant to Fed. R. Civ. P. 42, the related securities fraud class actions filed against Elan Corporation, PLC ("Elan" or "Company")[1]; (2) to be appointed Lead Plaintiff in these Actions pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(b) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) for approval of his selection of the law firm of Brower Piven, A Professional Corporation ("Brower Piven") as Lead Counsel for Lead Plaintiff and the Class.

As described in the Schedule of Transactions and Losses for Gary W. Kleinman attached to the Declaration Of David A.P. Brower In Support Of The Motion Of Gary W. Kleinman To Consolidate Related Actions; To Be Appointed Lead Plaintiff; And To Approve Proposed Lead Plaintiff's Choice Of Counsel ("Brower Decl."), at Exhibit 2, Mr. Kleinman has suffered a loss of approximately $4,257,795.45 as a result of his transactions in Elan securities between June 17, 2008 and July 29, 2008, inclusive ("Shortest Class Period"), and between May 1, 2008 and July 29, 2008, inclusive ("*Goldbas* Class Period").[2] To the best of his knowledge, Mr. Kleinman has

---

[1] The related securities fraud class actions in this Court include the following cases: *Plumbers & Steamfitters Local 773 Pension Fund v. Elan Corporation, PLC, et al.*, 1:08-cv-08761-AKH (S.D.N.Y.; filed on Oct. 14, 2008) ("*Local 773*"); *Feingold v. Elan Corporation, PLC, et al.*, 1:08-cv-09179-AKH (S.D.N.Y.; filed on Oct. 27, 2008) ("*Feingold*"); *Magel v. Elan Corporation, PLC, et al.*, 1:08-cv-09808-AKH (S.D.N.Y.; filed on Nov. 13, 2008) ("*Magel*"); *Goldbas v. Elan Corporation, PLC, et al.*, 1:08-cv-10280-AKH (S.D.N.Y.; filed on Nov. 25, 2008) ("*Goldbas*"); and *Senegal v. Elan Corporation, PLC, et al.* (S.D.N.Y.; filed on Dec. 11, 2008) ("*Senegal*") (collectively, the "Action(s)").

[2] For purposes of this lead plaintiff motion, Mr. Kleinman adopts either the Shortest Class Period or the *Goldbas* Class Period (collectively, "Class Period"). *See* discussion *infra* Part II.B.2. The

sustained the largest loss of any investor seeking to be appointed Lead Plaintiff in these Actions.

In addition to evidencing the largest financial interest in the outcome of this litigation, Gary W. Kleinman's Plaintiff's Certification demonstrates his intent to serve as Lead Plaintiff in this litigation, including his cognizance of his duties of serving in that role.[3] Mr. Kleinman fully understands his duties and responsibilities to the proposed class (the "Class"), and is willing and able to oversee the vigorous prosecution of these Actions. Mr. Kleinman is presumptively the "most adequate plaintiff."

## PROCEDURAL BACKGROUND

Five related cases alleging substantially identical claims for similar classes of Elan securities purchasers are pending in this Court. The first lawsuit, *Local 773*, was filed on October 14, 2008 in this Court. Thereafter, the following additional cases alleging the same or similar claims were filed in this Court: *Feingold; Magel; Goldbas*; and *Senegal*. Pursuant to 15 U.S.C. § 78u-4(a)(3)A)(i), on October 15, 2008, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from the notice (December 15, 2008). *See* Brower Decl., Exhibit 3.

Mr. Kleinman is a member of the Class (*see* Brower Decl., Exhibit 1) and he has timely

---

uncertainty results from Mr. Kleinman's current inability to review the allegations in the *Goldbas* complaint which is not available on PACER, on the filing firm's website, or by written request to the filing firm. However, Mr. Kleinman's stated $4,257,795.45 in losses remains the same for both class periods.

[3] The PSLRA authorizes any member or group of members of the putative Class seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). A copy of Gary W. Kleinman's Plaintiff's Certification reflecting his transactions in Elan securities during the Class Period is attached as Exhibit 1 to the Brower Declaration.

moved within the 60 day period following publication of the October 15, 2008 notice as required for appointment as Lead Plaintiff under the PSLRA.

## STATEMENT OF FACTS[4]

Elan is a neuroscience-based biotechnology company. Elan's Biopharmaceuticals section engages in research, development and commercial activities involving Alzheimer's disease, a progressive brain disorder and form of dementia that gradually destroys a person's memory and ability to learn, reason, make judgments, communicate and carry out activities of daily living. Pharmaceutical Research and Manufacturers of America has stated that there are more drugs in the neurological disease pipeline for Alzheimer's disease that affects more than five million people in the United States than for any other illness except pain.

In its effort to join this expanding market and beat its competitors, Elan and Wyeth jointly developed Bapineuzumab (AAB-001), an experimental humanized monoclonal antibody for the treatment of mild to moderate Alzheimer's disease. Bapineuzumab was designed to clear toxic beta amyloid from the brain, with the hope that this might slow or prevent the progressive neurodegeneration in the brain associated with Alzheimer's disease. In clinical trials, Elan and Wyeth dosed patients with Bapineuzumab to bind and clear the beta-amyloid peptide plaques that appear to be the main constituent of amyloid plaques in the brain of Alzheimer's disease patients. An advantage of Bapineuzumab is that the treatment reduces or eliminates safety problems associated with therapies that stimulate an immune response.

On May 21, 2007, Elan and Wyeth announced their plans to initiate phase 3 clinical trials of Bapineuzumab. The phase 3 studies were launched prior to the conclusion of the ongoing phase 2 studies according to Elan and Wyeth based on the accumulated data from the phase 1,

---

[4] This Statement of Facts is taken from the allegations contained in the complaints filed in the *Feingold, Magel and Local 773* Actions.

3

phase 2 and a 4.5-year follow up study of patients involved in the Elan and Wyeth AN-1792, active immunotherapy Alzheimer's treatment, trial.

On June 17, 2008,[5] Elan and Wyeth issued a press release regarding the phase 2 trial of Bapineuzumab: "Elan and Wyeth Announce Encouraging Top-line Results from Phase 2 Clinical Trial of Bapineuzumab for Alzheimer's Disease."  The press release boasted of "statistically significant and clinically meaningful benefits in the patients in the study who did not carry the gene that increases the risk of having Alzheimer's disease."  Although the press release stated that the study "did not attain statistical significance on the primary efficacy endpoints in the overall study population," its highly positive assessment of the results of the Phase 2 trial was intended to and did encourage neurologist to enroll patients with mild to moderate Alzheimer's in the ongoing Phase 3 trials.  As a further result of this announcement, the price of Elan ADRs rose from $27.11 to $30 in one day, or 10.7%, on extremely high volume.  The share price continued to rise throughout the following days up to $35 range.

On July 29, 2008,[6] at a major medical meeting of the Alzheimer's Association, Elan and Wyeth disclosed the true facts concerning the Phase 2 material trial of AAB-001.  The detailed findings revealed that only the patients lacking the APOE4 mutation, only about a third of all Alzheimer's patients, showed a slower decline in brain functions with Bapineuzumab treatment.  Further, the trial only showed a 5 point effect on the standard survey scale (ADAS-COG), compared with existing Alzheimer's drugs that usually show around a 3 point effect.  The drug

---

[5] June 17, 2008, is the beginning of the Shortest Class Period, and the complaints filed in the *Feingold, Magel and Local 773* Actions never mention an event occurring on May 1, 2008, the commencement date for the *Goldbas* Class Period.  *See* discussion *infra* Part II.B.2.

[6] July 29, 2008 is the Shortest Class Period and the *Goldbas* Class Period.  *See* discussion *infra* Part II.B.2.

4

showed little or no benefit and more side effects in the other two-thirds of the patients who have the APOE4 mutations. Therefore, improvement over placebo did not reach significance and could have been random in the overall trial of all patients. This conflicts with the detailed results of prior claims from the June 17th press release of "statistically significant and clinically meaningful benefits" based on 48 patients in four dose groups who were treated with the drug who did not carry APOE4. Also, some patients' results were worse than with the placebo in respect to some measures of cognition and function. Efficacy also did not increase with the dose. As a result of these disclosures, the price of Elan ADRs plunged from $33.75 to $19.63 in one day, a 42% decline, as artificial inflation came out of the price, on a volume of over 80,000 million shares.

During the class period, Defendants materially misled the investing public, thereby inflating Elan ADRs by publicly issuing false and misleading statements and failing to disclose the full, unfavorable results of the phase 2 clinical study of Bapineuzumab. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, members of the Class, including Plaintiff, have suffered significant losses and damages.

## ARGUMENT

### I.     THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. Both the Federal Rules of Civil Procedure (*see* FED. R. CIV. P. 42(a))[7] and the PSLRA provide for consolidation of related actions brought under the federal

---

[7] *See* Fed. R. Civ. P. 42(a): "Consolidation. If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."

5

securities laws.  Section 21D(a)(3)(B)(iii) of the Exchange Act addresses the issue of consolidation of related securities actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the Court shall not make the determination [of appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered . . . .

*See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The related Actions are suited for consolidation.  The class action complaints are all brought by purchasers of Elan securities against the same Defendants and contain similar allegations charging Defendants with making false and misleading statements, and omitting material information concerning the Company's business during the relevant period.[8]  While district courts have significant discretion in determining the propriety of consolidation, they have recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and/or reports.  *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).  Differences between particular defendants, damages, and/or class periods do *not* defeat the appropriateness of consolidation for federal securities cases based upon the same underlying facts.  *See Skwortz v. Crayfish Co.*, No. 00 Civ. 6766, 2001 U.S. Dist. LEXIS 15532, at *6 (S.D.N.Y. Sept. 26, 2001) *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003).  Therefore, this Court should consolidate the related Actions.

---

[8] This information is based on the review of the complaints in the *Local 773*, *Magel, Feingold,* and *Senegal* Actions at the time of the filing of this Motion and a press release issued after the filing of the *Goldbas* complaint.  Brower Decl., Exhibit 5.  Again, the *Goldbas* complaint was not available on PACER, on the filing firm's website, or by written request to the filing firm.

## II.     MR. KLEINMAN SHOULD BE APPOINTED LEAD PLAINTIFF

### A.     The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a strict, detailed procedure for the selection of Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed *Local 773* Action published a notice on *Business Wire* on October 15, 2008. *See* Brower Decl., Exhibit 3.[9] This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be December 15, 2008. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. 15 U.S.C. § 78u-4(a)(3)(B)(i). In making this determination, the statute directs the Court to the following objective criteria:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—

---

[9] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-cv-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

### B. Mr. Kleinman Is "The Most Adequate Plaintiff"

#### 1. Mr. Kleinman Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff

Mr. Kleinman moves this Court to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. The plaintiff in the first-filed action published a notice on *Business Wire*, a national business-oriented wire service, on October 15, 2008. Accordingly, Mr. Kleinman meets the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) and has filed his motion by December 15, 2008.

Moreover, Mr. Kleinman has the largest known financial interest in the relief sought from his investment in Elan securities during the proper class period. *See* discussion *infra* Part II.B.2. Mr. Kleinman has shown his willingness to represent the Class by signing the sworn Plaintiff's Certification detailing his Elan transaction information during the Class Period and confirming his willingness to discharge the obligations of a class representative in these Actions. *See* Brower Decl., Exhibit 1.

In addition, Mr. Kleinman has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm resume of proposed Lead Counsel, Brower Piven, is attached as Exhibit 4 to the Brower Declaration.

8

### 2. Mr. Kleinman Has the Largest Financial Interest Under the Proper Class Period

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See See Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401-02 (S.D.N.Y. 2004). As demonstrated herein, Mr. Kleinman, with losses of approximately $4,257,795.45, has the largest known financial interest in the relief sought by the Class under the proper Class Period. *See* Brower Decl., Exhibit 2.

As referenced, above, three of the cases comprising the Actions use a class period of June 17, 2008 through July 29, 2008 (*Feingold*; *Magel*; and *Local 773*; *i.e.*, the Shortest Class Period). The *Goldbas* Action uses a class period of May 1, 2008 through July 29, 2008 (i.e., the *Goldbas* Class Period). As indicated (*supra* note 2), the complaint in the *Goldbas* Action is not available.[10] Therefore, Mr. Kleinman does not know whether the *Goldbas* Class Period that was noticed in a November 25, 2008 press release (Brower Decl., Exhibit 5) is supported by the complaint. However, here, Mr. Kleinman's losses would be the same under both the Shortest Class Period and the slightly longer *Goldbas* Class Period. Thus, the use of the longer *Goldbas* Class Period does not change the analysis here, notwithstanding case law holding that the class period in the first-filed action should be used. *See Piven v. Sykes Enters. Inc.*, 137 F. Supp. 2d 1295, 1303 (M.D. Fla. 2000) (the class period noticed in the first-filed complaint is the appropriate class period at the lead plaintiff selection phase because it was the period sent out in the notice to the class); *In Re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999)

---

[10] One explanation for why the complaint is not available is that the plaintiff in the *Goldbas* Action may not have complied with the rule requiring that a PDF of a complaint be delivered to the Clerk's Office within 24 hours of the assignment of a case number to make same available through PACER. *See* SDNY Electronic Case Filing Rules and Instructions, Rule 14.3.

(same); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("For the purposes of this analysis, we use the longer class period with the earlier start date. We do so because the result under both potential class periods is the same for [the lead plaintiff movant].").

The *Senegal* Action, filed only four days before the lead plaintiff deadline in the Actions, extended the Class Period from a 42-day Shorter Class Period or 90-day *Goldbas* Class Period to one that is 17 months long (May 21, 2007 through October 21, 2008; "Expansive Class Period"). Besides the fact that members of the *Senegal*, *Goldbas* or *Feingold – Magel - Local 773* classes have not had a fair opportunity to consider their option whether to seek appointment as lead plaintiff in light of the vastly expanded Expansive Class Period, Mr. Kleinman believes the Expansive Class Period is not supported by the allegations in the complaint filed in the *Senegal* Action and may have simply been used as a tactic to inflate the financial interest of counsel's potential lead plaintiff movant to promote its appointment as lead plaintiff. Therefore, the Court must eliminate the claimed losses of any proposed lead plaintiff incurred during the portion of an alleged class period where there are no alleged "plausible" factual basis for a claim based on the class period used in the complaint.[11]  *See In re Centerline Holding Co. Sec. Litig.,* No. 08 Civ.

---

[11] The complaint in the *Senegal* Action makes a bald allegation that beginning on May 21, 2007, Defendants did not disclose that their motive for conducting a Phase III trial of bapineuzumab before Phase II results were available was "their desire to bring to market a drug that acts on bets amyloid protein before their competitors, without sufficient regard for the drug's efficacy and safety."  *Senegal* Complaint, at ¶ 35.  This allegation is not substantiated in the *Senegal* complaint.  It would not have been a secret that bringing drugs to market is a competitive process, so it is hardly plausible that such a motive would constitute an actionable omission under Section 10(b) of the Exchange Act.  *See, e.g., Sonnenberg v. Prospect Park Fin. Corp.*, No. 91-435 (DRD), 1991 U.S. Dist. LEXIS 20428, at *41 (D.N.J. Aug. 20, 1991) ("the failure to disclose the motive behind a director's decision is not actionable unless accompanied by objective and external deeds or omissions") (citation omitted). The end of the Expansive Class Period in the *Senegal* Complaint is marked by an October 21, 2008 date, a date never mentioned in the *Senegal* Complaint.  The *Senegal* Complaint does, however, twice mention an October 22, 2008 date when Wyeth (a company in association with which Elan was developing bapineuzumab; *Senegal* Complaint, at ¶ 3) announced that "some European regulators had asked

10

505 (SAS), 2008 U.S. Dist. LEXIS 36406, at *10-14 (S.D.N.Y. May 5, 2008) ("I find that the proper standard [to determine the earliest possible date on which investors were deceived] is that which is used to evaluate a motion to dismiss; the standard of plausibility:" citing *Bell Atl. Corp. v. Twomby,* 127 S. Ct. 1955, 1970 (2007)).  Further, because the *Senegal* complaint expanding the Class Period by over a year was filed only one full business day before the date the lead plaintiff motions were due, investors were not provided with sufficient notice to appraise themselves of the new class period, yet another reason that the Shortest Class Period, and perhaps the *Goldbas* Class Period[12], are more appropriate here, assuming the *Goldbas* Complaint supports the *Goldbas* Class Period.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (declining to extend the class period by over ten months; "I find that the use of the longer, unnoticed class period is improper. This longer class period would include many--perhaps thousands--more potential class members who were not apprised of their right to move to be appointed lead plaintiff in this action.  For the purpose of determining lead plaintiff, I use the noticed class period.").

### 3. Mr. Kleinman Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

---

that trials of bapineuzumab be delayed following mixed results of mid-stage U.S. trials" and that "European regulators had asked that enrollment be delayed in two late-stage trials of the drug to review mixed results from completed mid-stage trials and to review designs of the pair of larger planned studies." *Senegal* Complaint, at ¶¶ 3, 40.  However, notwithstanding that the price of Elan ADRs declined after this announcement (*Senegal* Complaint, at ¶ 41), nowhere in the *Senegal* Complaint is there an allegation that the foregoing was a corrective disclosure of an earlier misrepresentation or omission.  Thus, the October 21, 2008 (or October 22, 2008, as the case may be) Expansive Class Period end date, like its May 21, 2007 commencement date, does not relate to actionable conduct supported by any factual allegations.

[12] Until the complaint filed in the *Goldbas* Action becomes available, Mr. Kleinman will not be able to determine whether there was any actionable misrepresentation or omission on May 1, 2008 that would justify use of that date to commence the *Goldbas* Class Period.

11

interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to Lead Plaintiff selection under the PSLRA); *Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted).

As detailed below, Mr. Kleinman satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff. Mr. Kleinman has claims that are typical of those of other Class Members and he can adequately serve as Lead Plaintiff.

### i. Mr. Kleinman's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class."  The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory.  *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the claims of Mr. Kleinman are identical to, and non-competing and non-conflicting with the claims of the other Class members. Mr. Kleinman invested in Elan securities during the Class Period when the prices of those securities were artificially inflated as a result of Defendants' misrepresentations and omissions, and thus, both Mr. Kleinman and the Class Members suffered damages as a result of these investments.  Therefore, Mr. Kleinman's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 49-50.

Further, Mr. Kleinman is not subject to any unique or special defenses.  The fact that Mr. Kleinman purchased options to invest in Elan securities is irrelevant to his typicality or adequacy.  The term "security" includes, *inter alia*, investment contracts, a security future, certificate of interest, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security including any interest therein or based on the value thereof.  *See* 15

13

U.S.C. §78c(a)(10).  Courts routinely certify options traders to represent both derivatives and common stock traders in securities class actions. *See, e.g., In re Sepracor Inc., Sec. Litig.* 233 F.R.D. 52, 56 (D. Mass. 2005) (finding option trader who did not own common stock eligible to represent a class that included purchasers of all securities of the company).[13]  For instance, in *In re Priceline, Inc., Securities Litigation*, 236 F.R.D. 89 (D. Conn. 2006), defendants argued, because [the lead plaintiff] had traded almost exclusively in put options, that the characteristics of this type of security rendered him an unsuitable representative of class members who traded only in common stock.  *See id*. at 96, 98.  Rejecting this argument, the court found the lead plaintiff's "interests sufficiently aligned with those of the class members," and appointed him as a class representative*.  See id.* at 96.  Thus, Mr. Kleinman meets the typicality requirement of Fed. R. Civ. P. Rule 23 because his claims are the same as the claims of the other Class members.

---

[13]  *See also In re Enron Corp. Sec. Litig*., 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("When plaintiffs have alleged such a common course of conduct, courts have found no bar to class certification even though members of a class may have purchased different types of securities or interests"); *Deutschman v. Beneficial Corp*., 132 F.R.D. 359, 371 (D. Del. 1990) (certifying plaintiff who never purchased common stock to represent purchasers of common stock and call options because "[Third Circuit] considers the positions of stock purchasers and option purchasers substantially the same vis-à-vis securities fraud"); *In re XM Satellite Radio Holdings Sec. Litig.,* 237 F.R.D. 13, 21 (D.D.C. 2006) (rejecting the argument that options purchasers, as purchasers of "different securities," were atypical of common stock purchasers and finding a sub-class unnecessary); *Crossen v. CV Therapeutics,* No. 03-cv-3709, 2005 U.S. Dist. LEXIS 41396, at *10, 20 (N.D. Cal. Aug. 9, 2005) (court appointed a lead plaintiff that primarily sold call option contracts, finding that "[g]enerally, investors who trade options are entitled to the fraud-on-the-market presumption because the value of options is directly related to the value of common stock."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-4 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives); *In re Tel-Save Sec. Litig.,* No. 98-cv-3145, 2000 U.S. Dist. LEXIS 10134, at *17 (E.D. Pa. July 19, 2000) (finding lead plaintiffs adequate representatives for "[b]oth option and stock holders [who] have an interest in proving that stock prices were artificially inflated by defendants' material misrepresentations and omissions."); *In re Donnkenny Inc., Sec. Litig*. 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (certifying trader in puts and call options as class representative).

### ii. Mr. Kleinman Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).

Mr. Kleinman's interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between Mr. Kleinman and the other Class members, but Mr. Kleinman has a significant, compelling interest in prosecuting these Actions to a successful conclusion based upon the very large financial loss of approximately $4,257,795.45 that he has suffered as a result of the wrongful conduct alleged in these Actions. This motivation, combined with Mr. Kleinman's identical interests with the members of the Class, demonstrates that Mr. Kleinman will vigorously pursue the interests of the Class. In addition, Mr. Kleinman has selected a law firm to represent it and the Class that is highly experienced in prosecuting securities class actions.

In sum, because of Mr. Kleinman's common interests with the Class members, his clear motivation and ability to vigorously pursue these Actions, and his competent counsel, Mr. Kleinman meets the adequacy requirement of Fed. R. Civ. P. Rule 23. Since Mr. Kleinman meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23, and has sustained the largest amount of losses from Defendants' alleged wrongdoing, Mr. Kleinman is the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and he should be appointed as such to lead these Actions.

### III. THE COURT SHOULD APPROVE MR. KLEINMAN'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Kleinman has selected Brower Piven to serve as Lead Counsel for the Class. The firm has not only prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions as lead and/or class counsel. *See* Brower Decl., Exhibit 4. This Court may be assured that in the event that Mr. Kleinman's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

### CONCLUSION

For all of the foregoing reasons, Mr. Kleinman respectfully request that this Court enter an order (1) consolidating all related Actions; (2) appointing Mr. Kleinman to serve as Lead Plaintiff in these Actions; (3) approving Mr. Kleinman's selection of Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: December 15, 2008                    Respectfully submitted,

                                                 **BROWER PIVEN**
                                                   A Professional Corporation

                                                  _/s/_  David A.P. Brower
                                                  David A.P. Brower (Fed. Bar. No. DB-4923)
                                                  Jessica Sleater
                                                  488 Madison Avenue
                                                  Eighth Floor
                                                  New York, New York 10022
                                                  Telephone: (212) 501-9000
                                                  Facsimile:  (212) 501-0300

**BROWER PIVEN**
  A Professional Corporation
Charles J. Piven
Yelena Trepetin
World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile:  (410) 685-1300

*Counsel for Gary W. Kleinman and Proposed Lead Counsel for the Class*

**ALMERICO & MOONEY**
Brian G. Mooney
4350 W. Cypress Street
Suite 820
Tampa, Florida 33607
Telephone: (813) 877-1800

*Additional Counsel for Gary W. Kleinman*