UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re ELAN CORPORATION SECURITIES LITIGATION | Master File No. 08-CV-8761-AKH |
|---|---|
| This document relates to: All Actions | |

# GARY W. KLEINMAN'S OPPOSITION TO
# TYNE & WEAR'S MOTION FOR LEAVE TO FILE A SURREPLY

Lead plaintiff movant Gary W. Kleinman respectfully submits this memorandum in opposition to Tyneside's[1] motion for leave to file a surreply memorandum (the "Proposed Surreply"), Dkt. No. 41,[2] in response to the Kleinman Supplemental Response.

## INTRODUCTION

Having ignored the procedures established by this Court for filing supplemental submissions on the lead plaintiff issue and failed to provide the substantive information that the Court ordered be included with those submissions, Tyneside now seeks leave to file a surreply. Not only does its Proposed Surreply still fail to provide the very basic, threshold information that the Court directed the competing lead plaintiff movants to provide, but Tyneside's putative justification for filing a surreply is based on a false premise. Contrary to Tyneside's facially false contention, Mr. Kleinman has scrupulously followed the Court's instructions regarding the exchange and filing of supplemental submissions. Furthermore, Mr. Kleinman's Supplemental Response raises no new substantive arguments. Instead, as the Court's February 20, 2009 Order

---

[1] All terms defined in Gary W. Kleinman's Reply To Tyne & Wear's Memorandum In Opposition To His Supplemental Submission In Support Of His Motion To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice of Counsel filed on April 10, 2009, Dkt. No. 39 ("Kleinman Supplemental Response"), shall have the same meaning herein.

[2] All references to docket entries, unless otherwise noted, are to the docket in *Plumbers & Steamfitters Local 773 Pension Fund v. Elan Corp., PLC, et al.*, 1:08-cv-08761-AKH (S.D.N.Y.; filed Oct. 14, 2008).

directed, Mr. Kleinman responded timely and appropriately to the issues raised in the April 3, 2009 Tyneside Supplemental Submission.[3] Thus, since Tyneside's Proposed Surreply is merely an attempt, without any cognizable justification, to remediate its failure to comply with this Court's February 20, 2009 Order, and since Tyneside still fails to provide the requisite information that the Court established the supplemental submission process to solicit, Tyneside's motion to file a surreply should be denied.

## ARGUMENT

### A. What The Court Ordered

By Order dated February 20, 2009, the Court set the procedure for exchanging and filing initial supplemental submissions and responses thereto, which provided that:

> Tyne & Wear and Kleinman shall exchange their prospective submissions by March 20, 2009, file the required submissions with the Court by April 3, 2009, and file responses with the Court by April 10, 2009.

Feb. 20, 2009 Order (Dkt. 33), at 3.

The Court described what minimum information these "required submissions" were to contain at the hearing on February 19, 2009:

> I want sufficient information from both of you that would give me confidence that were your clients to be selected as the lead plaintiff there would be a proper fiduciary on behalf of your class. Secondly, I want properly sworn trading records that will establish your losses, how they arose, what class period they should be attributed to, and all information that will be necessary for me to understand how your loss is derived.

Tr. at 28, lines 7-14.

The Court also explained the procedure it wanted followed for preparation and filing of these submissions at the hearing:

> I want these exchanged with one another and an opportunity to comment so I could evaluate the information to make a judgment. I'll suggest to you 30 days to

---
[3] Tyneside's Memorandum In Opposition to Gary Kleinman's Supplemental Submission, Dkt. No. 37.

> ***get all this information and to submit to each other***, another ten days to ***give me an overall submission that takes in the comments, whatever replies you wanted to make*** and to have it come to me at a specific date ***and five days after that to comment on the other***. ***So you're going to have three waves***. The first wave you'll exchange only between yourselves, and all other parties, but not for me. The second wave, ten days after, submitting comments to me. ***The third wave, five days after, submit comments on the other side's papers.*** After that, I'll schedule something and will make this judgment.

Tr. at 28, line 15; Tr. 29, line 3 (emphasis added).

Further explaining what it expected Tyneside's supplemental submissions to contain, the Court, in a colloquy with Tyneside's counsel, explained:

> THE COURT: I'm not going further in this. I will not rely in the choice of a fiduciary -- because that's what ***you're asking me to do, to appoint a fiduciary*** –
>
> MR. ROSENFELD: That's correct, your Honor.
>
> THE COURT: -- ***on the skimpy information that's given to me by … an entity providing the defined benefit plan*** that looks possibly like something like Bernie Madoff could have done.
>
> MR. ROSENFELD: Your Honor, it's a pension fund ….
>
> THE COURT: ***I don't know what the UK law is with regard to pension funds, I don't know the source of its money, I don't know how it's paying out. If it's paying out not in any way dependent on what's coming in or what assets it has***, it could be a dignified Ponzi plan.
>
>                            \*     \*     \*
>
> MR. ROSENFELD: Your Honor, we're happy to provide supplemental information…

Tr. at 12, line 8; Tr. at 13, line 9 (emphasis added).

On March 20, 2009, the parties were supposed to exchange their purported supplemental submissions. Mr. Kleinman provided Tyneside's counsel with a near final version of its entire submission, including the forms of the declarations from Mr. Kleinman and Professor Emmanuel Derman. In contrast, all that Mr. Kleinman received from Tyneside was the four-page First Moore Declaration, *see* Dkt. No. 38, Ex. C (Att. 1) (Declaration of Stephen Moore In Support of

3

the Tyneside Motion dated March 17, 2009), that provided no sworn *trading records* or any additional information to substantiate Tyneside's ability to serve as a fiduciary on behalf of the Class. Instead, this declaration -- Tyneside's entire purported prospective supplemental submission -- made only some vague, conclusory statements about Tyneside and the TW Investor, and merely referenced the *same list* of purported transactions in unspecific Elan securities that was attached to Tyneside's PSLRA Certification, *see* First Moore Declaration at ¶8, which the Court had already rejected as inadequate evidence of Tyneside's purported Elan losses. *See* Tr. at 12, lines 1-23.

Thus, the putative Tyneside supplemental submission exchanged with Mr. Kleinman – the four-page First Moore Declaration -- did not provide what the Court requested and what Tyneside's counsel promised in open-court to provide – details about Tyneside and the TW Investor to support Tyneside's ability to serve as a fiduciary for the Class and effectively manage this litigation, and *sworn trading records* that would, *inter alia*, evidence what entity or entities, if any, actually purchased Elan securities; which Elan securities were purchased; and where those securities were purchased -- all necessary information for the Court to determine under *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, No. 06-1664-cv(L), 2008 U.S. App. LEXIS 24490, at *24-26 (2d Cir. Dec. 3, 2008), whether Tyneside is the real party in interest and can serve as a lead plaintiff.

B. **What The Parties Submitted**

For his part, Mr. Kleinman simply filed with the Court on April 3, 2009 substantially the same material that he had exchanged with Tyneside on March 20, 2009. *See* Dkt. No. 36 (the "Kleinman Supplemental Submission"). In contrast, the actual Tyneside Supplemental Submission filed on April 3, 2009, Dkt. No. 37, was substantially different than the prospective

4

submission -- the First Moore Declaration -- it provided to Mr. Kleinman on March 20, 2009, which had grown from just four pages to over 100 pages, and now included a never before seen "expert" declaration from the oft rebuffed Frank Partnoy. *See* Kleinman Supplemental Response at 23 n.30.[4]

Thereafter, as expressly provided in the Court's February 20, 2009 Order, on April 10, 2009, Mr. Kleinman filed the Kleinman Supplemental Response to the Tyneside Supplemental Submission, which, as that Order contemplated (and given Tyneside's decision not to provide Mr. Kleinman with anything resembling its actual final supplemental submission to the Court) was Mr. Kleinman's one and only opportunity to address the Tyneside Supplemental Submission. Inexplicably, however, Tyneside chose not to submit any response to the Kleinman Supplemental Submission on April 10, 2009 as required by the Court's February 20, 2009 Order.

Thus, Tyneside, failed to use its last opportunity allowed by the February 20, 2009 Order to provide the information originally requested by the Court at the February 19, 2009 hearing; failed to demonstrate that it had either standing or authority to pursue this Action; failed to demonstrate, even if it had standing to bring the claims in the Action (which it does not), that Tyneside is a proper fiduciary or, as a subdivision of a foreign sovereign, has the right constitutionally or by treaty to submit itself to the binding jurisdiction of this Court as a party-plaintiff in a private action; and failed even to attempt to rebut the evidence provided by Mr. Kleinman that he is the presumptive lead plaintiff under the PSLRA, that he has claims that are common with those of the other members of the Class, that he can and will adequately and

---

[4] Indeed, the only difference between the materials Mr. Kleinman provided to Tyneside on March 20, 2009 and those filed with the Court was that the Kleinman Supplemental Submission was line edited to somewhat reduce its size. If the Court wishes, Mr. Kleinman will provide a copy of the materials exchanged with Tyneside on March 20, 2009 and the material Tyneside provided to Mr. Kleinman to compare the differences between the two exchanged submissions and those actually filed with the Court.

5

vigorously represent the interests of Class members in the discharge of his fiduciary duties as lead plaintiff and a class representative, and that he is not subject to any potential cognizable disabling conflicts of interest or unique defenses.

Instead, in the afternoon on Saturday, April 11, 2009, Tyneside filed a document on the Court's ECF system entitled "Tyne & Wear's Memorandum In Reply To Gary Kleinman's Supplemental Submission," Dkt. No. 40,[5] which complained only that Mr. Kleinman would file a response on April 10, 2009, as directed by this Court's February 20, 2009 Order, to the Tyneside Supplemental Submission filed on April 3, 2009 (which, incidentally, Mr. Kleinman had already filed). Thus, the only thing that this bizarre April 11th Tyneside "reply" shows is that Tyneside, and not Mr. Kleinman, disregarded the Court's instructions regarding supplemental submissions.

### C. Why Tyneside's Motion To File A Surreply Should Be Denied

Although Tyneside chose to forfeit its right to respond to the Kleinman Supplemental Submission by not filing a response on April 10, 2009, the date set by the Court's February 20, 2009 Order (or even in Tyneside's late weekend filing), with the intervening passage of almost two weeks, Tyneside apparently came to regret that decision and seeks leave to file a surreply. Simply, Tyneside's decision to ignore the plain language and schedule in the Court's February 20, 2009 Order should not be rewarded with leave to submit more briefing.

Moreover, Tyneside's Proposed Surreply should be rejected because it still does not answer those few simple questions for which the Court instituted the supplemental submission process to answer in the first place. Tyneside's Proposed Surreply, instead, offers misleading and, in some cases, outright false comments regarding the law and Mr. Kleinman's submissions. Because Tyneside's Proposed Surreply casts no light on its ability to represent the Class in this

---

[5] Tyneside's 3-page reply did reiterate Tyneside's confusion about which brief was to be filed when, a complaint already made in the Tyneside Supplemental Submission.

action (or even that it is, in fact, a member of that Class), Tyneside's motion to file a surreply should be denied for that reason as well.

Tyneside complains that the Kleinman Supplemental Response raised new substantive issues. Even if that were true (which it is not), Mr. Kleinman would be justified in doing so due to Tyneside's decision to exchange with Mr. Kleinman a prospective supplemental submission that was only four pages long and then to ultimately file a supplemental submission with the Court that exceeded 100 pages. Nevertheless, the issues that Tyneside argues were raised for the first time in the Kleinman Supplemental Response were not, in fact, raised for the first time by Mr. Kleinman in that filing.

For instance, the possibility that Tyneside did not purchase Elan securities that trade in the United States, and is therefore subject to a unique defense as a foreign investor who purchased the shares of a foreign company on a foreign exchange (*i.e.*, a "foreign cubed" investor), was actually initially raised by Mr. Kleinman in his initial opposition to Tyneside's lead plaintiff motion.[6] The certainty of this significant unique defense to Tyneside's claims was, however, not discernable from Tyneside's PSLRA Certification that did not even identify the Elan securities that Tyneside, albeit incorrectly,[7] claims it purchased. S*ee* Dkt. No. 15 (Rosenfeld Aff.), Att. 1. Nor was the fact that Tyneside purchased a security that can only be acquired on a

---

[6] Memorandum In Further Support Of The Motion Of Gary W. Kleinman To Be Appointed Lead Plaintiff And To Approve Proposed Lead Plaintiff's Choice Of Counsel And In Opposition To The Competing Lead Plaintiff Motions, Dkt. No. 16 ("Kleinman Opp."), at 20.

[7] As has been shown by Mr. Kleinman in his prior submissions, while Tyneside's sworn PSLRA Certification attests that it purchased Elan securities, *see* Dkt. No. 15 (Rosenfeld Aff.), Att. 1, Tyneside's counsel stated in open-court, on February 19, 2009, that it was not Tyneside (a municipal council that does not make investments for itself) which purchased the Elan securities Tyneside claimed, but that they were purchased for the TW Investor. *See* Tr. at 11, lines 5-21. To date, however, Tyneside has failed to provided any cognizable evidence of who, if anyone, actually connected with Tyneside purchased Elan securities and, if so, who made those purchases and for whose account. Thus, the situation is no clearer now than it was at the February 19, 2009 hearing.

7

foreign exchange revealed by Tyneside's counsel during the hearing before the Court on February 19, 2009, notwithstanding the extensive discussion of the types of securities that Mr. Kleinman believed Tyneside had purportedly purchased (*i.e.* ADRs in the U.S.), *see* Tr. at 27, line 11; Tr. 28, line 4. And Tyneside's alleged purchases of Elan securities on a foreign exchange were not disclosed in Tyneside's disingenuous four-page prospective supplemental submission that it provided to Mr. Kleinman's counsel on March 20, 2009. Instead, the facts confirming this disabling "foreign cubed" issue were only finally confirmed in the Tyneside Supplemental Submission filed on April 3, 2009, and even Tyneside, in revealing these facts, recognized that it would give rise to arguments that it was subject to a unique defense as a "foreign cubed" investor. *See* Tyneside Supplemental Submission, at 3-5 ("Given Kleinman's error, Tyne & Wear anticipates that Kleinman's revised challenge will be based on *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), where the Second Circuit addressed subject matter jurisdiction of United States courts in a 'so-called 'foreign-cubed' securities class action.'").[8] Thus, Tyneside's umbrage at Mr. Kleinman accepting its invitation is, to say the least, unfounded.

Apparently, Tyneside's real complaint is that it had hoped it could conceal that it had purchased on a foreign exchange until the last possible moment without Mr. Kleinman being

---

[8] Mr. Kleinman has not argued that the foreign cubed investor defense will absolutely bar such an investor from recovering in a U.S. court, but only that "foreign cubed" investors are unsuitable lead plaintiff/class representatives because, unlike U.S. investors or foreign investors who acquire their shares on a U.S. exchange, foreign cubed investors do not have an absolute right to bring their claims and are, therefore, subject to a classic unique defense. Indeed, in *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. N.Y. 2008), cited by Tyneside, the Second Circuit found it lacked subject matter jurisdiction with respect to the claims of a foreign-cubed investor. *See id*. at 177. However, for the purposes of a lead plaintiff motion, it is irrelevant whether Tyneside will ultimately prevail at trial or on appeal against the unique foreign cubed plaintiff defense because the test of a disabling unique defense for the purposes of Fed. R. Civ. P. 23 is not whether the plaintiff faced with a defense peculiar to its individual situation will win or lose on the issue, but whether it will become a major focus of the litigation that will distract the parties from the issues common to the members of the class. *See, e.g., Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008). That is precisely what will happen here with respect to Tyneside.

able to respond to this revelation that, as the Tyneside Supplemental Submission itself acknowledges, it knew presented a serious obstacle to Tyneside representing a class in a U.S. class action case. Unfortunately for Tyneside, the Court made it clear at the hearing on February 19, 2009 that the responses ordered by the Court's February 20, 2009 Order were to "submit comments on the other side's [initial April 3rd supplemental] papers" – which is exactly what Mr. Kleinman did in "response" to the surprise revelations in Tyneside's Supplemental Submission.[9]

---

[9] The fallacy of Tyneside's position that Mr. Kleinman has raised new substantive arguments for the first time in his April 10th response is demonstrated by an examination of the table of contents of Tyneside's Proposed Surreply. The first subject concerns the inevitable need for determining whether the Court even has subject matter jurisdiction over the claims of this foreign cubed investor – an issue raised by Tyneside itself in its April 3rd Tyneside Supplemental Submission. The second subject, Tyneside's status as an institutional investor, has been the subject of extensive briefing on the lead plaintiff motion here, and was raised again in the Tyneside Supplemental Submission, which made it proper for Mr. Kleinman to respond by showing that the law recognizes no preference for institutional investors with smaller losses than competing individual investors. *See* Kleinman Supplemental Response at 18 n.11. The third subject – "Tyne & Wear Properly Providing Trading Records" - is just another attempt by Tyneside to argue – still without any cognizable support -- that it has produced sworn ***trading records*** when, in fact, all it has done is reference the same functionally useless list of unsubstantiated transactions in some unspecified securities purchased on some unidentified exchange. This issue is hardly new, since it was the insufficiency of this same trading information that triggered the Court's request for supplemental evidentiary submissions in the first place – evidence that, ***even in Tyneside's attempt to make a sixth submission to the Court,*** it has failed to provide. Similarly regarding Tyneside's fourth subject – "Kleinman's Attacks Distort the Record of Professor Frank Partnoy," relating to Mr. Partnoy's declaration that Tyneside failed to reveal to Mr. Kleinman's counsel before it filed its materially extended supplemental submission on April 3rd., Mr. Kleinman's responses to that putative "expert" were entirely proper since he certainly could not have responded earlier since Tyneside chose not to share it with Mr. Kleinman when the parties exchanged their prospective supplemental submissions on March 20th. It is understandable that Tyneside would not want anyone commenting on Mr. Partnoy's *bona fides* as an expert given the number of times Courts in this District and elsewhere have rejected his opinions regarding financial matters, *see* Kleinman Supplemental Response, at 18 n.30, and given the fact that Tyneside has offered Mr. Partnoy to provide opinions of law that he is not qualified to provide and which are improper. Indeed, it is hard to distort the inadequacy of Mr. Partnoy as an expert when, as a self-professed expert on options, he swore under oath that Mr. Kleinman's call options "expired" during the Class Period, *see* Declaration of Professor Frank Partnoy at ¶9, Ex. D (Att. 4) to Rosenfeld Supp. Aff., when, in fact, he sold them -- a fact anyone with a rudimentary understanding of options could discern just from the transaction dates provided in Mr. Kleinman's PSLRA Certification. Finally, the last subject on which Tyneside seeks to surreply is Tyneside's atypicality to represent the Class here -- a subject that has been at the heart of all of the lead plaintiff proceedings to date. Given the amount of time already spent on the myriad problems peculiar to Tyneside that have already diverted the parties' attention significantly, and will continue to do so if Tyneside is appointed to any leadership role in this case, Tyneside's need to extend the lead plaintiff process with further argument about its typicality demonstrates that it is, indeed, atypical and subject to numerous disabling unique defenses.

Thus, Mr. Kleinman's April 10, 2009 response did exactly what the Court ordered it to do – "comment on the other side's [April 3rd supplemental submission] papers." *See* Tr. at 29, line 2.

### D. Why Mr. Kleinman Should Be Permitted To Respond To The Surreply

For the foregoing reasons Tyneside's motion for leave to file a surreply should be denied, and Mr. Kleinman should be appointed lead plaintiff in this Action. Nevertheless, should the Court decide to allow Tyneside's Proposed Surreply, Mr. Kleinman respectfully requests the opportunity to respond to it as it contains numerous material misstatements.

For instance, Tyneside accuses Mr. Kleinman of representing that "courts have never appointed a foreign investor as sole lead plaintiff…." Proposed Surreply at 1. Mr. Kleinman never said any such thing – and Tyneside knows it! Rather, as Tyneside itself acknowledges, Mr. Kleinman pointed out that most courts that have "allowed foreign investors to serve as lead plaintiffs have not allowed such investors to serve as *sole* lead plaintiff….'" *Id*., at 4 (quoting Kleinman Supplemental Response, at 10-11 n.18). Thus, Mr. Kleinman did not argue that courts "never" appoint foreign investors as a lead plaintiff – sole lead or otherwise. Rather, as Mr. Kleinman's numerous citations in that footnote make clear, courts have, indeed, appointed foreign investors to serve as lead plaintiff, but most have also required a U.S. co-lead plaintiff. Tyneside's desire to re-write Mr. Kleinman's argument surely does not support its appointment as a lead plaintiff.

Moreover, none of Tyneside's new "foreign investor" case citations aid it with its particular problem – that it is a "foreign cubed" investor. Three of the four cases it cites in its Proposed Surreply involved shares either purchased by a proposed foreign lead plaintiff made by

those investors on a U.S. exchange or involved claims against a U.S.-based company[10] – not foreign investors who purchased a foreign security of a foreign company on a foreign exchange as Tyneside claims it did. The other case – apparently the only one Tyneside could find from the massive PSLRA lead plaintiff jurisprudence - where a "foreign cubed" lead plaintiff was appointed lead plaintiff has been superseded by subsequent Second Circuit case law and the case itself (along with the claims of the class supposedly being represented in that case) was dismissed shortly after the lead plaintiff's appointment due to the foreign cubed lead plaintiff's false factual allegations in its complaint.[11]

One more example of Tyneside's misdirection is its statement that "… Kleinman, for the first time, attempts to rebut the presumption that Tyneside is the most adequate lead plaintiff by arguing that it is subject to the 'foreign cubed' subject matter jurisdiction defense." Proposed

---

[10] In *NECA-IBEW Pension Fund and Southwest Carpenters Pension Trust v. Neurometrix Inc.,* No. 08-10434-RWZ (D. Mass.), Neurometrix was a Delaware corporation with its principal executive offices located in Massachusetts, *see* Dkt. No. 1 on *Neurometrix* docket, and its common stock only traded in the U.S. on the NASDAQ. *See* http://phx.corporate-ir.net/phoenix.zhtml?c=180007&p=irol-stockquote. Thus, *Neurometrix* involved a U.S. company whose common shares traded only on a U.S. exchange. In *Mally v. Quiao Xing Universal Tel., Inc.,* No. 07 Civ. 7097 (DLC) (S.D.N.Y.), the corporate defendant was incorporated in the British Virgin Islands, but its common stock traded only in the U.S. on the NASDAQ. *See* http://www.cosun-xing.com/inv/inv_01.asp. Thus, again, *Mally* involved a company whose regular equity securities only traded on a U.S. exchange. Similarly, in *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39 (D. Mass. 2001), while Lernout was a Belgian corporation, it had its executive offices in Burlington, Massachusetts, and its common stock traded on the NASDAQ, *see id.* at 42, which was where two of the foreign members of the appointed lead plaintiff group had purchased all of their shares – in the U.S. *See id.* at 46. These cases did not involve foreign investors who purchased a foreign company's securities solely on a foreign exchange as did Tyneside/TW Investor here; rather, they involved purchases by foreign investors of securities of U.S. companies and/or purchase of securities on a U.S. exchange.

[11] In Tyneside's only "foreign cubed" lead plaintiff case, *Corwin v. Seizinger*, No. 07 Civ. 6728 (DC), 2008 U.S. Dist. LEXIS 3045 (S.D.N.Y. Jan. 8, 2008), the Court appointed a foreign investment manager of the kind that the Second Circuit subsequently found lacked standing in a securities fraud action in *W. R. Huff Asset Mgmt,* 2008 U.S. App. LEXIS 24490, at *24-26. Thus, the *Corwin* decision has been impliedly overruled by *Huff*. Moreover, the outcome in *Corwin* demonstrates why courts are generally loath to appoint "foreign cubed" investors – or, for that matter, foreign investors at all – to lead federal securities class actions. The *Corwin* action was subsequently dismissed because the foreign plaintiff admitted that the factual allegations contained in its complaint were false and requested leave to amend them out. *See In re GPC Biotech AG Sec. Litig.*, No. 07 Civ. 06728 (DC), 2009 U.S. Dist. LEXIS 26259 (S.D.N.Y. Mar. 12, 2009); *see also* Dkt. No. 72 on *GPC* docket.

Surreply, at 3. Aside from the fact that, as discussed above, it was not the "first time" in the April 10, 2009 Kleinman Supplemental Response that Mr. Kleinman raised the potential that Tyneside faced the unique defense that it is a "foreign cubed" investor, *see* Kleinman Opp., at 20, Mr. Kleinman has not attempted to rebut any presumption in favor of Tyneside because Tyneside has no presumption in its favor under the PSLRA since it is not the movant with the largest losses during the only class period supported by plausible allegations of fraud. Rather, Mr. Kleinman is the person entitled to that presumption here. Tyneside's attempt to subliminally suggest otherwise aside, as Mr. Kleinman pointed out, even, arguendo, if Tyneside had the largest losses, it is still an unsuitable lead plaintiff because it cannot adequately represent the interests of class members and is subject to unique defenses, *see* Kleinman Opp. at 17-20; Kleinman Reply at 19, either of which are fatal to its motion to be appointed lead plaintiff because it does not otherwise meet the requirements of Fed. R. Civ. P. 23 as required by the PSLRA. *See* Kleinman Supplemental Response at 15-20.

Thus, if this Court allows Tyneside's Proposed Surreply, Mr. Kleinman requests the opportunity to expound upon these and other defects in Tyneside's submission.[12]

## **CONCLUSION**

For the foregoing reasons, Tyneside's motion for leave to file a surreply memorandum should be denied in its entirety.

---

[12] One new issue is raised by Tyneside's citation to *NECA*, No. 08-10434-RWZ, where the Court instructed the lead plaintiff to explain how it came to retain its counsel. *See* Proposed Surreply, Ex. 2. If further supplementation is permitted, one area of further exploration would be how the Coughlin Firm came to be retained by Tyneside in this litigation. Mr. Kleinman has already provided sworn testimony regarding how he came to retain his counsel in this case and why he is seeking to be appointed the lead plaintiff, *see* Kleinman Supplemental Submission, Ex. 2, ¶¶7-8, 11-12 – matters that Tyneside appears to argue are necessary by its reliance on *NECA*. Indeed, given the information that Mr. Kleinman has provided compared to what Tyneside has refused to provide, coupled with the lack of transparency regarding Tyneside itself and its alleged Elan securities transactions throughout these proceedings, the record strongly favors the appointment of Mr. Kleinman as lead plaintiff.

Dated: April 27, 2009

Respectfully submitted,

**BROWER PIVEN**
  A Professional Corporation

  /s/   David A.P. Brower
David A.P. Brower
Jessica Sleater
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Counsel for Gary W. Kleinman and
Proposed Lead Counsel for the Class*

**ALMERICO & MOONEY**
Brian G. Mooney
4350 W. Cypress Street
Suite 820
Tampa, Florida 33607
Telephone: (813) 877-1800

*Additional Counsel for Gary W. Kleinman*

**CERTIFICATE OF SERVICE**

    I hereby certify that Gary W. Kleinman's Opposition To Tyne & Wear's Motion For Leave To File A Surreply was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and copies will be sent by electronic mail to those indicated as non-registered participants on April 27, 2009.

                                                                                      /s/ David A.P. Brower
                                                                                      David A.P. Brower